```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          AT BLUEFIELD
```

**HUMAN RESOURCES DEVELOPMENT**
**FOUNDATION, INC.,**

    **Plaintiff,**

v.                                    CIVIL ACTION NO. 1:05-00559

**WORK4WV-REGION 1, INC., et al.,**

    **Defendants.**

### MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

Pending before the court are defendants' Motion to Require Plaintiff to Elect Remedy (Doc. No. 15), Motion to Exclude Witnesses and Damages (Doc. No. 24), Motion for Summary Judgment (Doc. No. 40), and plaintiff's Motion for Stay of Proceedings (Doc. No. 37), and Motion to Compel[1] (Doc. No. 38).  For the reasons set forth below, defendants' Motion for Summary Judgment is granted, and the court does not reach the other pending motions.

### I.  Background

This matter was removed from the Circuit Court of McDowell County on July 13, 2005, on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (See Doc. No. 1.)

---

[1] By Standing Order, plaintiff's Motion to Compel was previously referred to a magistrate judge for disposition pursuant to 28 U.S.C. § 636.  (See Doc. No. 3.)  For purposes of expediency, the court VACATES that standing order as to this motion (Doc. No. 38) only.

Plaintiff Human Resource Development Foundation, Inc. ("HRDF"), seeks monetary damages and injunctive relief from defendants WORK4WV-Region 1, Inc. ("Region 1"), and the Region 1 Local Elected Officials Board ("the Board"). Defendants are organizations formed pursuant to the West Virginia Workforce Investment Act, West Virginia Code Section 5B-2B-1, et seq.

Plaintiff's complaint alleges that, in March of 2004, Region 1 sought bids for the provision of Out-of-School Youth services for the program period of July 1, 2004, to June 30, 2005, without setting forth the estimated funds available for the provision of these services. (Doc. No. 1 Ex. 1.) Plaintiff contends that it found out only after it had submitted its bid that its proposal exceeded the $400,000.00 amount available for the program. When it learned of this maximum funding amount, plaintiff requested in writing that defendant not penalize it for exceeding the funding allocation, as it had not been timely informed of the funding limit. Plaintiff alleges that on the same day Region 1's proposal Evaluation Committee met to review the proposals, plaintiff's executive director, Homer Kincaid, spoke with Region 1's executive director, William Loope, by telephone, and the two agreed that defendant would consider plaintiff's cost per participant figure as submitted and would adjust the amount of plaintiff's total grant request to reflect the maximum amount of funding available. (Id.)

Plaintiff contends that it was induced by way of this conversation to allow its original proposal to stand as submitted, and that the evaluation method Region 1 applied to plaintiff's proposal violated principles of substantive and procedural due process.  (Id.)  Plaintiff adds that when Region 1's Executive Committee subsequently declared the Evaluation Committee's work in reviewing these proposals null and void without providing for a meaningful opportunity for review, plaintiff's posture in the bidding process was further compromised.  (Id.)

After a second round of bidding, the Out-of-School Youth services contract was awarded to plaintiff's only competitor, Regional Education Service Agency I ("RESA-I").  Thereafter, RESA-I and Region 1 entered into a Grant Agreement whereby RESA-I would provide the services at issue for the sum of $450,000.00, a sum that exceeds by $50,000.00 the maximum funding amount reported to plaintiff in April of 2004.  The Board subsequently approved this services contract.  (Id.)  Plaintiff also takes issue with Region 1's failure to provide written justification setting forth the reasons why plaintiff, the lowest bidder, was not awarded the contract at issue.  (Id.)  The complaint does not allege that defendants' discretion was limited such that they were required to select the lowest bid submitted.

Plaintiff alleges that defendants' actions have been arbitrary, capricious, discriminatory, and have directly contravened current law and policies, as well as the accepted customs and practices, involved in the procurement process. Plaintiff also alleges that one or more of the meetings conducted by Region 1's Evaluation Committee did not comply with the quorum requirements contained in W. Va. Code § 5B-2B-3(j) and (k), and that the actions undertaken at those meetings are therefore invalid.  With regard to damages, plaintiff requests that it be compensated for the damages and injuries it sustained as a result of defendants' alleged misrepresentations, acts, and omissions connected with the procurement process and free competition (i.e., an amount that will compensate it for the contract it allegedly would have been awarded but for the tainted bidding process).  Further, plaintiff requests that defendants mandate and implement a "fair and impartial bidding procedure" and "provide proper training" to their Evaluation Committee.  (Id.) HRDF also requests that an impartial body review the corrective bidding procedure annually for substantive and procedural compliance.[2]  (Id.)

Defendant filed its Motion for Summary Judgment on January 23, 2007, arguing first, that plaintiff had no property interest

---

[2]  Because of the court's disposition of plaintiff's underlying cause of action, there is no basis for the injunctive relief plaintiff seeks.

in the award of the Out-of-School Youth services contract, and second, that plaintiff's discovery omissions and delays require exclusion of evidence such that plaintiff will be unable to prove its prima facie case.  (Doc. No. 40, 41.)  Plaintiff has filed no response to the motion, which is now ripe for adjudication.

## II.  Standard of Review

Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56 (2003).  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  As the United States Supreme Court of Appeals stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for

a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51. Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

**A.   Plaintiff's Due Process Claim**

Plaintiff's complaint alleges that the evaluation method employed by Region 1 in assessing plaintiff's proposal "operated to unfairly prejudice HRDF to such an extent that it is violative of principles of substantive and procedural due process." (Doc.

No. 1 Ex. 1 ¶ 18.)[3]  Article III, Section 10 of the West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."  The Supreme Court of Appeals of West Virginia recognizes a private cause of action under this section "where state government, or its entities, cause[s] injury to a citizen by denying due process."  Hutchison v. City of Huntington, 479 S.E.2d 649, 660 (W. Va. 1996).

Evaluation of plaintiff's due process claim requires a two-step process.  Waite v. Civil Serv. Comm'n of W.Va., 241 S.E.2d 164, 167 (W. Va. 1977).  "Initially, we determine whether [plaintiff's] interest rises to the level of a 'liberty' or 'property' interest.  If the answer is no, the second step" – determining what due process is required – "becomes unnecessary because appellant has no claim warranting constitutional protection."  Id.

It appears from the allegations in the complaint that plaintiff claims a due process violation of a property interest.  The West Virginia Supreme Court has defined "property interest" to include "not only the traditional notions of real and personal

---

[3] Plaintiff's complaint does not specify whether this due process claim is brought pursuant to the Fourteenth Amendment to the United States Constitution or Article III, Section 10 of the West Virginia Constitution.  The court has analyzed the claim pursuant to the state constitution, but notes that dismissal would also be necessary under a federal constitutional analysis.

property, but also . . . those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings." Id. at syl. pt. 3. In order to merit protection as a property interest, however, such a benefit "must be one to which there is more than a 'unilateral expectation.'" Id. at 168 (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). As the United States Supreme Court has explained,

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Roth, 408 U.S. at 577.

Plaintiff alleges that the following acts of defendants were "arbitrary, capricious, discriminatory and directly contravened current law and policies, as well as the accepted customs and practices, involved in the procurement process":

> a) Terminating the RFP process after Region 1 WIB's Youth Council RFP Evaluation Committee had already reviewed and evaluated the initial proposals submitted by RESA-I and HRDF;
> b) Declaring the Evaluation Committee's work in reviewing and evaluating the initial Out-of-School Youth proposals null and void;
> c) Extending the deadline for submitting proposals for the provision of Out-of-School Youth services to May 7, 2004; and
> d) Discarding and destroying the April 19, 2004, evaluation score sheets.
>
> . . .

-8-

    a)   Engaging in a second review, evaluation, and
         scoring of the proposals;
    b)   Failing to state the points assigned to the five
         criteria pursuant to which the proposals were to be
         evaluated;
    c)   Awarding the Out-of-School Youth services contract
         to RESA-I;
    d)   Entering into a Grant Agreement with RESA-I for an
         amount that exceeds the maximum funding amount
         reported by Region 1 WIB as available for the
         provision of Out-of-School Youth services;
    e)   Negligently or intentionally misrepresenting to
         HRDF the maximum funding amount available for the
         provision of Out-of-School Youth services;
    f)   Adopting the earlier-proposed, superceded budget of
         RESA-I; and
    g)   Failing to provide a written justification setting
         forth the reasons why HRDF, which was the lowest
         bidder, was not awarded the contract.

(Doc. No. 1 Ex. 1 ¶¶ 24, 34.)

The complaint states no authority to support plaintiff's position that the above acts contravene any property interest plaintiff claims to have had in the bidding process, nor does it explain in what way defendants' actions might be construed as "discriminatory" toward plaintiff.  Furthermore, although the complaint loosely refers to "law and policies" as providing support for plaintiff's claims, the only such authority apparent to the court actually refutes plaintiff's position.

As courts have observed in the context of standing, "Competitive bidding is not intended to benefit bidders.  It is designed to protect the taxpaying public from fraud or favoritism in the expenditure of government funds for public works projects."  Malan Constr. Co. v. Bd. of County Road Comm'rs, 187

F. Supp. 937, 939 (E.D. Mich. 1960).  It is therefore logical that so-called "disappointed bidders," in order to state a claim of entitlement protected by due process, generally must show that they were actually awarded the subject contract at some procedural stage, or that state officials had only limited discretion in determining who should be awarded the contract. <u>United of Omaha Life Ins. Co. v. Solomon</u>, 960 F.2d 31, 34 (6th Cir. 1992).  Plaintiff has made neither showing.

Moreover, the federal Workforce Investment Act of 1998, which is the parent legislation to the West Virginia Workforce Investment Act pursuant to which defendants are organized, clearly states that its purpose is to "provide workforce investment activities, through statewide and local workforce investment systems, that increase the employment, retention, and earnings of participants, and increase occupational skill attainment by participants, **and, as a result, improve the quality of the workforce, reduce welfare dependency, and enhance the productivity and competitiveness of the Nation**."  29 U.S.C. § 2811 (emphasis added).  This purpose would in no way be served by granting disappointed bidders for services provided under the Act the right to any and all procedural safeguards they desire, even where no provision is made for those safeguards in the relevant authorities.

Furthermore, although the complaint refers obliquely to defendants as having acted negligently (see Doc. No. 1 Ex. 1 ¶ 34(e)), it does not begin to state a prima facie case of negligence on the part of defendants.  See Strahin v. Cleavenger, 603 S.E.2d 197 (W. Va. 2004)(discussing common law elements of negligence).  Moreover, "any negligent act leading up to the award of a public contract, such as a mistake in arithmetic, the careless loss or misplacement of a bid, an error in reading bid figures, etc., cannot alone form the basis for recovery in tort . . . if the final award itself is legally unassailable." Somers Constr. Co. v. Bd. of Educ. for the S. Gloucester County Reg'l High Sch. Dist., 198 F. Supp. 732, 735 (D. N.J. 1961).

### IV.  Conclusion

Plaintiff having failed to establish the necessary elements of either a due process or negligence claim, defendants' motion for summary judgment (Doc. No. 40) is granted.  As such, the court need not reach the other pending motions (Doc. Nos. 15, 24, 37, 38).  A separate judgment order will be entered contemporaneously with this opinion implementing the court's decision.

It is **SO ORDERED** this 9th day of March, 2007.

ENTER:

*[signature: David A. Faber]*

David A. Faber
Chief Judge